UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JESUS GOVEA** | **CASE NO. 2:22-CV-01328** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **C B & I L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM RULING

Before the Court is "Defendant's Motion for Summary Judgment" (Doc. 24) wherein Defendant moves to dismiss Plaintiff, Jesus Govea's claims pursuant to Federal Rule of Civil Procedure 56.

### FACTUAL STATEMENT

Defendant, CB&I, LLC, ("CB&I") hired Plaintiff on May 3, 2016, to work as a Rigger Journey at its Cameron LNG project site in Hackberry, Louisiana.[1] Plaintiff's job responsibilities as a Rigger Journey included performing the following activities: setting up cranes, hoisting equipment to support the transportation of materials, selecting cables, ropes and pulleys, assisting the crane operators, and setting up hoisting equipment.[2]

Plaintiff worked on a five-person crew, including himself, one crane operator, and three other riggers. One of his job duties was to offload rebar, a heavy metal used to build an LNG plant into a pit in the laydown yard. Plaintiff's first crew was Crane operator, Lawrence Adams (White), Riggers Elliot Williams (Black), Kenneth Monroe (Black),

---

[1] Defendant's exhibit A, Jesus Govea deposition, pp. 10, 13,56-57; Defendant's exhibit B, Govea deposition, pp. 90-91, 223.
[2] Complaint, ¶ 52, Doc. 1; Defendant's exhibit B, Govea deposition, p. 223, Defendant's exhibit A, pp. 56-57.

Jerry Vincent (White), and Plaintiff (Hispanic), along with their direct supervisor, Foreman, Paul Williams (Black) (hereinafter collectively referred to as the "crew").

Plaintiff applied to be a police officer on February 18, 2016, for the September 2016 recruiting class of the Virginia Beach Police Department ("VBPD"). Plaintiff traveled to Virginia to complete paperwork and complete an agility test. In June 2016, Plaintiff received a job offer from VBPD that would start September 22, 2016, but he did not accept it at that time.

On July 4, 2016, Plaintiff informed the Superintendent, Sidney "Boo" Murray that he would be moving to Virginia Beach in September and told the Human Resources Department for CB&I that he was going into law enforcement at the VBPD.[3] Plaintiff resigned his employment on August 15, 2016.[4] In August 2016, Plaintiff moved to Virginia Beach, but he had not yet accepted the job with the VBPD.[5] Plaintiff's wife moved to Virginia Beach prior to July 20, 2016. Plaintiff moved to Virginia Beach and began his employment with the VBPD in September 2016.

Plaintiff alleges that his August 15, 2016, resignation was a constructive discharge.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a

---

[3] Plaintiff disputes that the reason he was resigning was because of secured employment with the VBPD.
[4] Plaintiff disputes that his resignation was voluntary, rather it was a constructive discharge.
[5] Plaintiff's exhibit A-1, Govea deposition, pp. 56-57, 114.

genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Plaintiff claims that approximately two weeks after he began working on the aforementioned crew, co-worker, Vincent started making racist jokes in the crew's

presence. Some of those remarks include "go swim back across the river," "wetback," "spic," "beaner," "greasy" and "you stink." Vincent also referred to Hispanics as "nasty" and stated, "Mexicans only come here to take white man's jobs," "did the Mexicans at the food camp leave any food for the brothers? You know they don't get food stamps here." He also made jokes about "watermelon" and "chicken." Foreman Williams would laugh at Vincent's jokes, which were repeated daily. Vincent also referred to African Americans as "porch monkeys," routinely making cotton picking and welfare jokes.[6]

Plaintiff asserts that considering that Vincent was older, he tried to talk to him about his comments and jokes, but Vincent responded that he was just joking and having fun.[7]

On July 19, 2016, Plaintiff, Elliot Williams, and Monroe verbally reported Vincent's conduct to their new Foreman, James Dever, however, nothing was done to stop Vincent's conduct.[8] Forman Dever requested that Plaintiff, Elliot Williams and Monroe provide statements to Human Resources. After not receiving a response, on July 21, 2016, Plaintiff, Elliot Williams and Monroe met with Site Superintendent Murray to report Vincent's conduct.[9] On July 22, 2016, Plaintiff, Elliot Williams, and Monroe met with Murray. Plaintiff asserts that Murray commented that he could make it all go away without going to Human Resources.[10] Plaintiff claims that Murray got mad when he insisted that the issue go to Human Resources.[11]

---

[6] Plaintiff's exhibit A, Govea depo. pp. 108-09.
[7] Plaintiff's exhibit A, Govea depo. p. 125.
[8] Plaintiff's exhibit A, Govea depo. pp. 154-55, 238; Plaintiff's exhibit E, pp. 197-200.
[9] Plaintiff's exhibit A-2; Plaintiff's exhibit E, pp. 201-07; Plaintiff's exhibit E-1.
[10] Plaintiff's exhibit E, pp. 231-35.
[11] Plaintiff's exhibit A, Govea depo. p. 180.

On July 23, 2016, Plaintiff, Elliot Williams, and Monroe collectively attempted to report the issue to Human Resources. Plaintiff claims that they were intercepted by Murray, who allegedly screamed "[w]hy the hell are you up here?"[12] Afterwards, Plaintiff claims that Murray met with Human Resources alone for about 30 minutes,[13] after which, Plaintiff, Elliot Williams and Monroe all made statement to Human Resources.[14] Sometime after that, Murray went back to his office and got the three statements that were previously made.[15] CB&I disputes that Murray ever said he could make this go away, and that Murray never attempted to stop Plaintiff from making his complaint to Human Resources.

Plaintiff had a private meeting with Amy Hayes and Shawn Lum, which prompted an investigation. CB&I established that Vincent had violated CB&I's policy prohibitions against discrimination and harassment. CB&I issued a Final Written Warning to Vincent on July 23, 2016, as to the off-color and racist remarks. Plaintiff complains that because Vincent was not terminated, CB&I does not enforce its "zero tolerance policy." Plaintiff also asserts that CB&I had notice of Vincent's violations and harassment as early as June 2016, when Foreman Williams personally observed Vincent's remarks and/or jokes.[16] Vincent was then moved to a different work crew, however, Plaintiff complains that Vincent was still in the same crew in the mornings during the safety meetings.[17] Plaintiff

---

[12] Plaintiff's exhibit A, pp. 195-96; Plaintiff's exhibit E, p. 263; Plaintiff's exhibit R, p. 2.
[13] Plaintiff's exhibit R, p. 3-4.
[14] *Id.*
[15] Plaintiff's exhibit N.
[16] Plaintiff's exhibits U, V; Plaintiff's exhibit E, pp. 156-61, 166-67, 174, 176-796; Plaintiff's exhibit B, p. 49; Plaintiff's exhibit L; Plaintiff's exhibit O.
[17] Plaintiff's exhibit A-1, pp. 79-80.

also complains that Vincent was allowed to remain with CB&I despite its policy of zero tolerance.

Defendant asserts that Foreman Williams was also suspended for five days for not reporting Vincent from July 25, 2016, through August 1, 2016.[18] Plaintiff claims that the suspension did not go through the Human Resources channels because there was no paperwork to corroborate the suspension.[19] Plaintiff concedes that after making the report on July 23, 2016, Vincent never harassed Plaintiff again. CB&I remarks that this was the first complaint it had received about Vincent.

Following this series of events, Plaintiff complains that Murry attempted to issue Plaintiff a disciplinary action for a safety violation involving taglines, which would have been a terminable offense.[20] However, a superintendent determined that Plaintiff did not commit a safety violation.[21] Plaintiff remarks that he never received any disciplinary actions throughout his employment with CB&I.

Plaintiff also complains that after Foreman Williams returned from his suspension on August 1, 2016, Williams engaged in scare tactics, such as glaring at him, that made Plaintiff fearful of termination. Plaintiff also alleges that Williams threatened to "beat his ass." Plaintiff further claims that Williams made comments to him that he was "scum of the earth," "I'm going to get your ass fired" and "it would be a shame if you get hurt out here." Plaintiff suggests that Williams sent him to perform "bottom of the barrel" tasks.

---

[18] Defendant's exhibit E, ¶¶ 25-26, and exhibits 1 and 2 attached thereto.
[19] Plaintiff's exhibit W; Plaintiff's exhibit C, pp. 99-100.
[20] Plaintiff's exhibit E, pp. 144-45.
[21] Defendant's exhibit B, p. 220.

After reporting Foreman Williams' comments and conduct to Human Resources, on August 2, 2016, Williams was transferred and replaced by another supervisor.

On August 3, 2016, Plaintiff, through his counsel sent CB&I's counsel a written document alleging that Plaintiff had been subject to retaliation by Williams, and also asserts that the retaliation from Williams started on July 21, 2016.[22]

Plaintiff then claims that another General Foreman approached him and attempted to persuade him, Elliot Williams, and Monroe to drop the legal action.[23]

Plaintiff alleges that Foreman Williams's retaliatory conduct culminated in a physical threat, and he was fearful for his safety. Plaintiff argues that the lasting impact of the longstanding, unremedied harassment, combined with the overt retaliatory efforts of Williams, warranted his constructive discharge on August 15, 2016.

In his Complaint, Plaintiff asserts claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Defendant moves for summary judgment as to Plaintiff's claims. Defendant argues that Plaintiff cannot show sufficiently severe or pervasive racial harassment to constitute a hostile work environment, nor can Plaintiff show that he suffered any materially adverse employment action as a result of his report to Human Resources.

*Race Discrimination Claims*

Plaintiff has alleged that he was exposed to a hostile work environment on account of his race, in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981.[2] To

---

[22] Plaintiff's exhibit N.
[23] Plaintiff's exhibit A, pp. 232-34.

establish a prima facie case of a hostile work environment, a plaintiff must show the following: (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) the complained-of harassment was due to his membership in a protected group (e.g., due to his race), (4) the harassment complained of affected a term, condition, or privilege of his employment, and (5) the employer knew or should have known of the harassment but failed to take prompt remedial action. *Mendoza v. Helicopter*, 548 F. App'x 127, 128–29 (5th Cir. 2013) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Defendants challenge plaintiff's ability to carry his burden on both the fourth and fifth elements.

Under the fifth element, an employer can only be held liable for harassment by a coworker if it knew or should have known of the behavior but failed to stop it. *Sharp v. City of Houston*, 164 F.3d 923, 929–30 (5th Cir. 1999). An employer "has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem." *Id.* at 929. An employer may have constructive knowledge of harassment when the harassment is pervasive, though such a finding is less likely when the employer has in place a procedure by which employees can report instances of harassment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 656 (5th Cir. 2012).

Here, the record shows that immediately after Plaintiff and his co-workers reported Vincent's behavior, he was removed from the work crew. However, Plaintiff argues that CB&I had prior constructive notice of Vincent's behavior through Foreman Paul Williams

and Foreman Devers. Defendant argues neither qualify as "higher management" such that their knowledge should be imputed to CB&I.

For Title VII purposes, higher management "includes someone with not only the power to hire and fire the offending employee but also to take disciplinary action, to provide significant input into employment decisions, to instruct the offending employee to cease the offending behavior, or to implement other means of taking remedial action." *Sharp*, 164 F.3d at 929.

Defendant argues that Paul Williams lacked the authority to implement disciplinary actions, or hire and fire, without approval from a supervisor and Human Resources. Likewise, Dever, who took Paul Williams' place would not be considered higher management. Additionally, Murray did not witness any of Vincent's alleged harassment, and upon being informed of Plaintiff's complaint, he and Human Resources immediately began investigating the allegations.[24] Defendant posits that CB&I did not have knowledge of the harassment until July 19, 2016, after which it took immediate action to remediate the problem.

Plaintiff argues that actual knowledge of a supervisor, such as Paul Williams imputes notice and knowledge of the harassment to Defendant, and Williams' failure to take any remedial action. Plaintiff submits Defendant's policy that mandates that Paul Williams, as foreman, had an active duty to report and remediate the alleged harassment.[25] As such, Plaintiff posits that because Williams knew of and actively encouraged the

---

[24] Defendant's exhibit E, ¶ ¶ 9-25.
[25] Plaintiff's exhibit F, Rick Hopper deposition, p. 89, Plaintiff's exhibit N.

behavior, any subsequent action taken by Defendant several months later was insufficient and irrelevant.

In *Williamson v. City of Houston*, the Fifth Circuit held that "[i]f the employer has structured its organization such that a given individual has the authority to accept notice of a harassment problem, then notice to that individual is sufficient to hold the employer liable." 148 F.3d 462, 467 (5th Cir. 1998). Here, there is a chain of command that dictates that employees should report harassment to their direct supervisor first.[26] CB&I"s policy states that "[i]f you witness or experience harassment, discrimination or retaliation, you should notify your supervisor, department manager, Human Resources partner, or contact the CB&I Ethics Line."[27] In addition, CB&I also has other policies, regarding prohibiting workplace harassment, discrimination, and retaliation, which requires that you report the offending conduct to your supervisor or management.[28] There is no doubt that CB&I's policy requires employees to report their concerns to their supervisors. The Court finds that Foreman Williams' notice must be attributed to CB&I and that knowledge was known as early as May 2016.[29]

*Retaliation Through Constructive Discharge*

In order to survive summary judgment on claim for retaliation under Title VII (or Section 1981), the plaintiff must make a *prima facie* case showing (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there

---

[26] Plaintiff's exhibit A, pp. 101-102, 165-66; Plaintiff's exhibit A-1, p. 15; Plaintiff's exhibit F, p. 89; Plaintiff's exhibit N; Plaintiff's exhibit U; Plaintiff's exhibit V.
[27] Plaintiff's exhibit N, p. 12, ¶ C.
[28] Plaintiff's exhibit U, p. 1.
[29] Plaintiff's exhibit A, p. 110.

is a causal connection between the protected activity and the adverse employment action. *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017).

In determining whether a reasonable employee would have felt compelled to resign, courts in the Fifth Circuit consider the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *See Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 841 (5th Cir. 2015).

After Human Resources received Plaintiff's complaint regarding Paul Williams, and Williams was suspended for five days, Plaintiff was removed from Williams's crew, and thus only worked for him on that one day. Plaintiff submitted his resignation letter on August 15, 2016.

Defendant argues that Plaintiff's constructive discharge claim must failed because Plaintiff had made plans to resign before any of the alleged harassment and/or retaliation occurred. Here, the evidence shows that Plaintiff had intentions well before any of the alleged harassment took place of moving to Virginia Beach and working for the VBPD. Additionally, weeks before Plaintiff resigned, all harassment had ended. The Court finds that there is no genuine issue of fact for trial as to Plaintiff's claim for retaliation concerning his alleged constructive discharge.

*Hostile Work Environment*

Defendant argues that taking Plaintiff's allegations as true, they do not rise to the level of material adversity. See e.g., *Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 535 F.Appx. 348, 352 (5th Cir. 2013) (stares, whispers, impoliteness, and reporting conduct such as wearing earring were insufficient to establish an adverse employment action to support a retaliation claim); *Stingley v. Den-Mar Inc.*, 347 F.App'x 14, 19 (5th Cir. 2009) (a coworker maliciously talking about the plaintiff and causing others to treat her less cordially were not materially adverse employment actions).

Plaintiff claims that Williams retaliated against him by instructing him to move a stack of rebar five feet and moving a crane from one location to another. Plaintiff submits summary judgment evidence that both tasks were unnecessary and was Williams' means of punishment.[30]

Plaintiff resigned two weeks after he was transferred to another crew and was away from Paul Williams that entire time. Plaintiff argues that under the totality of circumstances, including Williams's threat, as well as the other racially charged and retaliatory conduct was enough to dissuade a reasonable employee from making a harassment complaint.

Plaintiff also noted that his co-worker, Elliot Williams, also resigned in October 2016, as a result of the alleged hostile work environment and retaliatory behavior.

---

[30] Plaintiff's exhibit G, pp. 68-69

Defendant comments that Plaintiff's transfer occurred only after Plaintiff refused to speak with his General Foreman based on the advice of counsel. Defendants also states that Plaintiff's transfer did not result in a change in duties, hours or pay. Defendant informs the Court that Plaintiff actually received a pay increase.[31] As to the transfer to another crew, Plaintiff claims that he was transferred to a crew that ostracized him, and his two co-workers.[32]

Based on the accumulative racial slurs, jokes, inuendoes, threats, conduct, and racial comments, the Court finds that Plaintiff has submitted sufficient summary judgment evidence to support his hostile work environment claim.

## CONCLUSION

For the reasons explained herein, the Court will grant Defendant's motion as to the retaliation claim but will deny Defendant's motion as to Plaintiff's hostile work environment claim.

**THUS DONE AND SIGNED** in Chambers on this 1st day of October, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[31] Defendant's exhibit D and exhibits 2 and 3 attached thereto.
[32] Plaintiff's exhibit A, pp. 114-116.